## LIMERICK v. HOLDSWORTH et al.

(Supreme Court, Appellate Division, Second Department.   January 26, 1910.)

1. MASTER AND SERVANT (§ 278*)—INJURY TO SERVANT—DEFECTIVE APPLIANCES—EVIDENCE.

In an action for injuries to the driver of a truck, caused by the breaking of the pole, evidence *held* not to show that the pole was defective.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 278.*]

2. MASTER AND SERVANT (§ 264*)—INJURY TO SERVANT—ACTIONS—ISSUES, PROOF, AND VARIANCE.

Where, in an action for injuries to the driver of a truck the complaint alleged that the accident was caused solely because of the master's negligence in failing to furnish a suitable truck, and the evidence was directed to that issue, and the testimony of the direction of the master for loading the truck was admitted as incidental thereto, and as a part of the res gestæ, a judgment for plaintiff could not be sustained on the theory that the master's direction for loading was negligent.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 264.*]

3. PLEADING (§ 237*)—AMENDMENTS—CONFORMITY TO PROOF.

It is only where the issues are fairly and openly presented and contested by common consent, with a full understanding of the change of theory of the case, that the court may construe the pleadings as having been amended in conformity with the proof.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 603–619; Dec. Dig. § 237.*]

4. MASTER AND SERVANT (§ 278*)—INJURY TO SERVANT—INSURANCE—EVIDENCE.

In an action for injuries to the driver of a truck, loaded with a heavy iron casting, evidence *held* not to justify a finding of negligence of the master in directing the manner of loading the casting.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 278.*]

Appeal from Trial Term, Kings County.

Action by Charles A. Limerick against William H. Holdsworth and another, doing business under the firm name of William H. Holdsworth & Son.   From a judgment for plaintiff, and from an order denying a new trial on the minutes, defendants appeal.   Reversed, and new trial granted.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, THOMAS, and RICH, JJ.

Frank V. Johnson, for appellants.

Frederick S. Martyn (Herbert S. Worthley, on the brief), for respondent.

WOODWARD, J.   The plaintiff in this action, which is brought to recover damages for personal injuries sustained by him while in the employ of the defendants, was engaged in driving a team hitched to a truck used for transporting heavy iron castings from the defendant's

---

foundry to points of delivery, and had been thus employed, using the same truck, for a period of several weeks prior to the 24th day of April, 1905. On the date last above mentioned the plaintiff was directed by one of the defendants to take on a certain casting, weighing about 2,800 pounds, and to deliver the same at the Erie Basin. This casting was 5 feet 10 inches long, and 2 feet 10 inches wide; one side being much heavier than the other. It is claimed that one of the defendants directed this casting to be loaded in the front of the truck, as he desired to place some smaller castings in the rear end, and the negligence of the defendants, if it is negligence, must be found in this direction, for the negligence specially pleaded is not sustained by the evidence. After the casting had been placed upon the forward end of the truck, as it is claimed by the direction of the defendant, the plaintiff drove his team in upon some scales under a covered shed for the purpose of taking the weight of the casting; the truck having been previously weighed. After the weight had been taken, the plaintiff undertook to back his team, with its load, out of the shed and onto the street. He was standing upon the truck, back of the driver's seat, with his feet between holes in the heavy casting. While so stationed, and while his team was backing, the pole or tongue of the truck broke off near the axle, and the plaintiff testifies that the end or some part of the tongue flew up and hit him on the head, knocking him off the truck, and that the truck then turned over, the casting falling upon him and breaking his leg in such a manner that it was necessary to amputate the same.

The plaintiff's theory of the case was that the tongue or pole of the truck was defective; that it was worm-eaten and affected with dry rot, which a reasonable inspection on the part of the master should have discovered and remedied; and that the breaking of this pole was the proximate cause of the accident. He produced two witnesses to testify to the alleged condition of the pole at the time of the accident, and their evidence, if believed, would indicate that the pole was rotted to some extent, and that there were worm holes in it, but the pole was brought into court and displayed, and the learned trial court, in a memorandum handed down, declares that the evidence in support of the alleged defects in the pole was unsatisfactory, and we are clearly of the opinion that, with the evidence of a disinterested witness that the pole was in a proper condition, and that there were no defects which were apparent even after the accident, the verdict cannot be permitted to stand upon this theory.

And this brings us to the consideration of the question of whether the verdict, predicated upon a theory which does not appear to have been thought of by the plaintiff, or really litigated, can be permitted to stand. The complaint alleges, and no suggestion of an amendment appears, that:

"The foregoing accident was caused solely by reason of the negligence and carelessness of the defendants, their agents and servants, in neglecting and failing to provide a proper, safe, and suitable truck for the said plaintiff to work with and upon, and in causing, permitting, and allowing the said plaintiff to work with and upon the said truck, well knowing that the same was not proper, safe, or suitable, and in furnishing and providing for the use of

the plaintiff, and in directing him and requiring him to use, a truck which was of improper and imperfect construction and design, and which was not properly constructed and liable to tip over, and which was defective, worn out, and in a dangerous and unsafe condition for use; and the said defendants were also negligent and careless in failing to notify the plaintiff of any of the said defects of said truck, and in failing to provide a proper, safe, and suitable place for the plaintiff to work in and upon, and in failing to provide a proper, safe, and suitable truck and appliances for him to work with, and the plaintiff was in no way negligent."

The allegation is that the accident was caused "solely by reason of the negligence and carelessness of the defendants" in reference to the truck used and its condition, not that the direction of the defendant that the particular casting be placed upon the same in any particular place caused the accident, and the testimony of the plaintiff was all directed to the issue raised by his complaint and the denial of the defendants; the reference to the direction by one of the defendants being purely incidental, and as a part of the res gestæ, as it were, of the case. It is true there was no objection or exception interposed to the plaintiff's testimony upon this point; but it is entirely obvious that there was no occasion for an objection. The issue presented was that there was a defect in the truck, or in the appliances, not that the master had given negligent directions in the loading of the truck; and when the witness, in telling his story, and without any intimation—for it does not appear to have been thought of by the plaintiff at any stage of the trial—that the issues were to be changed, incidentally referred to the directions given him by one of the defendants, the defendants were not bound to anticipate this change of front, and to offer objections to the narrative, where it had no relation to the negligence alleged as the sole cause of the accident.

It is only in those cases where the issues are fairly and openly presented and contested by common consent, with a full understanding of the change of front, that the court is justified in construing the pleadings as having been amended in conformity with the proof; and there was no effort to have the court amend the pleadings, nor was there anything in the case to give notice to the defendants that the plaintiff intended by this purely incidental testimony to change the entire theory of the law suit. "Parties go to court to try the issues made by the pleadings," say the court in Wright v. Delafield, 25 N. Y. 266, 270, "and courts have no right impromptu to make new issues for them, on the trial, to their surprise or prejudice, or found judgments on grounds not put in issue, and distinctly and fairly litigated." Day v. Town of New Lots, 107 N. Y. 148, 154–155, 13 N. E. 915; Scott v. International Paper Co., 125 App. Div. 318, 322, 109 N. Y. Supp. 423, and authorities there cited. The case last above cited is peculiarly in point, although the decision rested upon a question of evidence.

In the case now before us there was no opportunity to object to the testimony, as it was not offered even by the plaintiff for the purpose which the court afterward made use of in disposing of the case. But, beyond this, there was no evidence in this case to justify a finding that it was negligent on the part of one of these defendants to direct that the casting should be placed in the front of the truck. The direction was not specific that the casting should be placed at any particular

spot. It was at most a mere general direction to place the casting in the front of the truck, so that some smaller ones might be loaded, leaving to those who were helping the plaintiff to load the truck to determine just how far front it should be placed, in what position it should be placed, and all the details. The only evidence bearing on the question of the danger of loading the casting on the front was given by one Shadbolt, in behalf of the defendant, on cross-examination, where he said that:

"When the front wheels of a truck are turned in such a manner that the axle is parallel with the length of the truck, then the points of support of the front part of the truck are very narrow. The only stability to that truck then is the base of the hind wheels. The truck practically rests upon the ground at three points, the two hind wheels and the single point in front. It therefore, necessarily follows from that that a heavy load placed on the front of the truck somewhat tends to destroy its equilibrium. If the weight is in the rear of a truck, the equilibrium would be greater; much more difficult to dislodge it."

The witness had been testifying on direct examination to the causes which led to the breaking of the pole, and this cross-examination was apparently in elaboration of this proposition, without any suggestion that the issue was being changed. There was no evidence whatever that the defendant, who is said to have directed that the casting be placed in the front of the truck, had any reason to believe that the front axle would be placed parallel with the length of the truck. Indeed, the testimony was that the purpose of the pole was to guide the truck; that the "front wheels could not change their position without the pole also swinging; it holds the front wheels in their proper relation; the pole and the front axle are always at right angles; as long as the pole is maintained directly in front, the wheels cannot turn, and the way to turn the wheels is to turn the pole around to one side or the other," so that if the pole did not break, and the driver did not permit his horses to veer around at right angles with his truck, there would be an entire absence of the only condition of danger suggested even remotely in the evidence. In other words, there was no necessary danger in loading the truck heavy in front. It was only under special conditions, which there was no reason to anticipate, that this particular loading would be dangerous; and every man familiar with teaming knows that it is customary, and in harmony with the economic application of power to the load, to place the greater part of the load over the front axle. The direction said to have been made was not a command to do a particular thing. It was merely in the form of a suggestion that this particular piece should be loaded toward the front, to give room for the other pieces. It was not a matter of judgment, but one of expediency; and there was no evidence that any danger whatever was to be apprehended from placing the load in front, rather than at the rear, for there was nothing in the evidence to show that it was anticipated that the forward wheels would be placed at right angles with the body of the truck, or that there was any reason why any person of ordinary prudence would anticipate such a situation in directing the loading of this truck.

The jury answered three specific questions submitted by the court,

holding that the proximate cause of the accident was the breaking of the pole, that the pole broke because of its defective condition, and that the defendant could have discovered this condition by the exercise of reasonable care. If the breaking of the pole was the proximate cause of the accident, then the alleged negligence in the direction to load was not the proximate cause of such accident; and as the learned court reached the conclusion would not support the finding that the pole broke because of defective condition, which an examination would have disclosed, and the direction in reference to the loading was not the proximate cause of the accident, it is clearly improper to sustain a verdict upon the latter ground, and particularly as that ground was not relied upon by the plaintiff, and was not fairly litigated upon the trial.

The judgment and order appealed from should be reversed, and a new trial granted; costs to abide the event. All concur.